UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH K. DURRELL, and ESTATE
OF ROBERT L. DURRELL,

      Plaintiffs,

v.

FANNIE MAE, and
FINANCIAL FREEDOM ACQUISITION, LLC,

      Defendants.
_____/

Case No. 12-11519
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 29, 2013.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion to Amend/Correct Complaint [dkt 19] and Defendants' Motion to Dismiss [dkt 6]. The parties have fully briefed the Motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process will not be aided by oral argument. Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without the Court entertaining oral argument. For the reasons that follow, Plaintiffs' Motion and Defendant's Motion are GRANTED.

**II. BACKGROUND**

**A. FACTUAL BACKGROUND**

Deborah K. Durell and Robert L. Durell held title to the property commonly known as 2430 Hiller Road, West Bloomfield, MI (the "Property") by virtue of a quit-claim deed dated April 22, 2006.

1

Mr. Durell applied for and received a Home Equity Conversion Mortgage ("HECM")[1] loan from Financial Freedom Senior Funding Corporation ("FFSFC"). At the time, Ms. Durell was 56 years old and did not qualify for the HECM Loan, which is available only to homeowners aged 62 and above. To qualify for the HECM loan, Mr. and Ms. Durell conveyed their interest by quit claim deed to Mr. Durell, who qualified for the loan because he was 66 years old. Only Mr. Durell executed the Home Equity Conversion Loan Agreement ("Loan Agreement") on December 5, 2008. The Loan Agreement outlined the overall HECM loan transaction between FFSFC and Mr. Durell. Mr. Durell also executed an Adjustable Rate Note (the "Note") pursuant to which he promised to repay the principal amount equal to the sum of all loan advances made under the Loan Agreement (the "HECM Loan"). To secure the indebtedness due under the Note, Mr. Durell signed an Adjustable Rate Home Equity Conversion Mortgage (the "Mortgage"). The Mortgage was recorded on December 30, 2008, with the Oakland County Register of Deeds.

Although Ms. Durell had quit-claimed her interest to Mr. Durell to allow him to apply for the HECM Loan, her marital interest in the property provided her with a future interest that was required to be subordinated to the Mortgage lien. Ms. Durell was therefore required to sign the Mortgage despite the fact that she was not eligible to apply for the loan. Ms. Durell signed the Mortgage in accordance with HUD's Mortgage Letter 97-15, which states that "all holders of any future interest in the property (remainder or reversion) will also be required to execute the mortgage to ensure that the mortgage is secured by a fee simple interest."

---

[1] An HECM or "reverse mortgage" is a form of equity release in which a mortgage lender (typically, a bank) makes payments to a borrower based on the borrower's accumulated equity in his or her home. Unlike a traditional mortgage, in which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding loan balance until certain triggering events occur (like the death of the borrower or the sale of the home). Because repayment can usually be deferred until death, reverse mortgages function as a means for elderly homeowners to receive funds based on their home equity. *Bennett v. Donovan*, 11-5288, 2013 WL 45879 (D.C. Cir. Jan. 4, 2013).

Also in connection with the HECM Loan, Ms. Durell signed a Non-Borrower Spouse Certification. When Ms. Durell signed as "Non-Borrower Spouse," she acknowledged that "she understands that should her spouse predecease her or fails to occupy the home where she resides as her principal residence, and unless another means of repayment is obtained, the home where she resides may need to be sold to repay the reverse mortgage loan and she may be required to move from her residence."

FFSFC assigned its interest in the Mortgage to Mortgage Electronic Registration Systems Inc. ("MERS"), as nominee for Financial Freedom, which was recorded on October 16, 2009. MERS then assigned its interest in the Mortgage to Defendant Financial Freedom Acquisition, LLC ("Financial Freedom"). Mr. Durell also signed a second promissory note ("Second Note") promising to repay the principal amount equal to the sum of all loan advances made under the Loan Agreement in the event that HUD was required to make payments on behalf of Mr. Durell under Section 255(i)(1)(A) of the National Housing Act. To secure the indebtedness due under the Second Note, Mr. Durell signed an Adjustable Rate Home Equity Conversion Second Mortgage (the "Second Mortgage"). The Loan Agreement, Note, Mortgage, Second Note, and Second Mortgage are collectively referred to as "Loan Documents."

On or about May 16, 2010, Mr. Durell died. Financial Freedom sent a letter to Defendant Estate of Robert Durell ("Estate") advising that Mr. Durell's death caused the HECM Loan to become due and payable. The letter stated that the Estate must advise whether it intended to pay off the HECM Loan (through refinancing or sale of the Property) and that if the Estate took no action within 30 days, HUD required Financial Freedom to start foreclosure proceedings. The Estate took no action to repay the HECM Loan, and Financial Freedom began foreclosure proceedings pursuant to the Mortgage and Michigan law. After providing the required notices under Michigan law and the Mortgage, the Property was sold at a Sheriff's sale to Financial Freedom on April 5, 2011. Financial Freedom received a

Sheriff's Deed, which was recorded on April 12, 2011. The redemption period expired on October 5, 2011.

**B. PROCEDURAL BACKGROUND**

On or about December 12, 2011, Defendant Fannie Mae filed a Complaint for Termination of Tenancy against Deborah K. Durell and Robert L. Durrell in the 48th District Court, as Case No. 11-35573-LT7 ("Case I"). On January 4, 2012, Defendant Deborah K. Durell and Third-Party Plaintiff, Estate of Robert L. Durell, filed a Counterclaim against Fannie Mae and a Third-Party Complaint against Third-Party Defendants Financial Freedom Senior Funding Corporation ("FFSFC") and Financial Freedom Acquisition, LLC ("FFA"). Upon stipulation of the parties, FFSFC was dismissed from this case on July 13, 2012.

On March 9, pursuant to stipulation of the parties, the 48th District Court entered an Order removing only the Counterclaim and Third-Party Complaint to Oakland County Circuit Court ("OCCC") and the case was docketed as Case No. 12-125928-CH ("Case II").[2] On April 4, 2012, FFSFC timely removed Case II to this Court.

On June 6, 2012, Plaintiffs filed a motion to amend their Complaint for a second time. The amended Complaint contains the following Counts: Count I – Breach of Contract; Count II – Violation of 12 U.S.C. 1715z-20(j); Count III – Violation of Mich. Comp. Laws § 600.3204(1)(a); Count IV – Quiet Title; Count V – Preliminary Injunction; Count VI – Right to Purchase Violation.

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all

---

[2] In Case I, the Durells were the named defendants and Fannie Mae was the named Plaintiff. Because the 48th District Court removed only the Durells' Counterclaim and Third-Party Complaint to the OCCC, the Durells became the named plaintiffs in Case II, while Fannie Mae, FFSFC, and FFA were the named defendants.

4

factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

### A. PLAINTIFFS' MOTION TO AMEND

As an initial matter, the Court will briefly address Plaintiffs' Motion seeking leave to amend their Complaint. Fed. R. Civ. P. 15 governs motions to amend pleadings. While this Rule specifies that "leave shall be freely given when justice so requires," a motion to amend a complaint should be denied "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Fed. R. Civ. P. 15(a); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

Plaintiffs request leave to amend their complaint so as to "better frame the factual and legal issues presented[.]" Defendants opposed the motion on the grounds that the amended complaint sets forth

claims that are largely identical to the claims set forth in the original complaint. The Court finds that Plaintiffs do not appear to have brought their motion in bad faith or for dilatory purposes. The motion does not result in undue delay or prejudice to Defendants. Moreover, the motion is not futile because it simply seeks to better frame the issues presented. As such, in the interests of justice, the Court shall grant Plaintiffs' Motion. Accordingly, the Court's analysis below shall rely on Plaintiffs' Second Amended Complaint [dkt 19, ex. 1].

**B. MOTION TO DISMISS**

*1. "Standing"*

In their Motion, Defendants argue that Plaintiffs lack standing to challenge the foreclosure because the redemption period has already expired. Defendant's assertion that Plaintiffs lacked standing is based on the Michigan Court of Appeals' decision in *Overton v. MERS*. According to Defendant, *Overton* involved the dismissal of a lawsuit challenging foreclosure after the redemption period expired as being based on "standing." *See Overton v. MERS*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009).

In response, Plaintiff argues that courts are in disagreement over whether a plaintiff challenging a mortgage foreclosure loses standing to sue upon expiration of the redemption period. According to Plaintiff, the Michigan Court of Appeals' decision in *Overton* is not a "standing" decision and is an improper basis for Defendant's claim that Plaintiffs lack standing.

Michigan courts have long held that a plaintiff is barred from challenging a foreclosure sale after the right to redemption has passed. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (finding that "plaintiffs did not avail themselves of their right to redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and title to the property were extinguished.") Several Michigan state and federal courts, discussed below, have applied *Piotrowski* to

bar claims by former property owners on their foreclosed properties after the period of redemption has passed. Even if an action challenging a foreclosure is filed *before* the expiration of the redemption period—which is not the case here—this does not toll the running of the redemption period and does not change this result. *Overton*, 2009 WL 1507342.

In *Overton*, the plaintiff challenged the foreclosure and sale of his property at public auction on April 18, 2007. *Id.* at *1. The redemption period expired on October 18, 2007, and plaintiff filed suit on September 21, 2007. *Id.* The Michigan Court of Appeals rejected plaintiff's argument that his filing suit tolled the redemption period:

> Plaintiff's suit did not toll the redemption period. Plaintiff is simply trying to wage a collateral attack on the foreclosure of the property. Even if his assertions were true and the cases he cites indeed supported his arguments, plaintiff was required to raise the arguments when foreclosure proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period. 'The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.' *Schulthies v. Barron,* 16 Mich. App. 246, 247–48, 167 N.W.2d 784 (1969). Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished. *Piotrowski v. State Land Office Bd.,* 302 Mich. 179, 187, 4 N.W.2d 514 (1942).

2009 WL 1507342, at *1.

The Michigan Court of Appeals reached a similar conclusion in two subsequent cases. *See Awad v. Gen. Motors Acceptance Corp.,* No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. April 24, 2012) (relying on *Overton* to conclude that after expiration of redemption period, plaintiff "lost all right, title, and interest in the property and, therefore, lost her standing to sue"); *Mission of Love v. Evangelist Hutchinson Ministries,* No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. April 12, 2007) (finding that plaintiffs "no longer had any right or interest" in a foreclosed property, and therefore no "standing" under Michigan law, after the expiration of the redemption period). Additionally, multiple federal cases

in this District have followed *Overton* to deny challenges to foreclosures following expiration of the redemption period regardless of the date of filing of plaintiff's complaint. *See Dixon v. Wells Fargo Bank, N.A.*, 12-10174, 2012 WL 4450502 (E.D. Mich. Sept. 25, 2012) (collecting cases that cite *Overton* and read it as a "standing" case).

The Court acknowledges that cases in this District have elicited varying interpretations of *Overton*, and the Sixth Circuit has questioned whether use of the term "standing" is correct when the term is used in the context of barring a plaintiff's claim to property post-redemption. *See El-Seblani v. IndyMac Mortg. Services*, 12-1046, 2013 WL 69226 (6th Cir. Jan. 7, 2013). Irrespective of this, the Court finds that the issue of whether *Overton* is a "merits"-based or "standing"-based decision, is not dispositive in this case. Under either reading, Plaintiffs' claims must fail because Plaintiffs failed to challenge the foreclosure before the redemption period expired, failed to redeem the property, and failed to salvage any claim by not showing—or even alleging—fraud or irregularity.

The foreclosure sale occurred on April 5, 2011 and Plaintiffs' right to redeem the property therefore expired on October 5, 2011. *See* Mich. Comp. Laws § 600.3204(8). It was not until January 12, 2012, that Plaintiffs commenced this action by filing their Counterclaims and Third-Party Complaint in Case I. Plaintiffs' claims do not toll the redemption period. Even if "[their] assertions were true and the cases [they] cite indeed supported [their] arguments, [they] were required to raise the arguments when foreclosure proceedings began." *Overton*, 2009 WL 1507342, at *1. *See also Richard v. Schneiderman & Sherman, PC,* 818 N.W.2d 334, 337 (Mich. Ct. App.2011), *rev'd on other grounds,* 807 N.W.2d 325 (Mich. 2012) (finding that an action challenging foreclosure must be brought "promptly and without delay" because the foreclosure statutes are intended to create finality and certainty in property rights.) Plaintiffs instead made no attempt to stay or otherwise challenge the foreclosure and sale.    As such,

8

when the redemption period expired on October 5, 2011, Fannie Mae became vested with all right, title and interest in the property—thereby precluding Plaintiffs' claims to the Property.

### 2. Fraud or Irregularity

The only possible exception to the rule that such claims are barred post-redemption applies when the mortgagor makes a strong showing of "fraud or irregularity." *Tatar v. Trott & Trott, P. C.*, No. 10–12832, 2011 WL 3706510, at *8 (E.D. Mich. Aug. 3, 2011). Yet, the standard for granting an extension for fraud or irregularity is a stringent one and a foreclosure will only be set aside if 'very good reasons' exist for doing so." *Kubicki v. Mortgage Electronic Registration Sys.*, 807 N.W. 2d 433, 434 (Mich. Ct. App. 2011) (internal quotations omitted). "[I]t would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Sweet Air Inv., Inc. v. Kenney*, 739 N.W. 2d 656, 659 (Mich. Ct. App. 2007) (internal quotations omitted). In particular, there must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant. *See Pine Oaks, LLC v. Devries,* No. 249163, 2004 WL 2827396, at *5 (Mich. Ct. App. Dec. 9, 2004) (finding "significant procedural irregularities with respect to the default, foreclosure and redemption" where home was sold for $100,000 less than its alleged value and where there were questions as to whether the foreclosure was undertaken against the proper party); *Freeman v. Wozniak,* 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) (finding no equitable grounds for relief where a plaintiff, due to mental inability, never received notice of a foreclosure whose "procedure was technically proper").

A claim of fraud under Michigan law requires the following elements: (1) that the defendant made a misrepresentation; (2) that it was false; (3) that defendant knew at the time of making the statement that it was false or was reckless with regard to knowledge of the truth; (4) that defendant made it with the intention that plaintiff would rely on it; (5) that plaintiff did rely and act on the

9

misrepresentation; and (6) that plaintiff suffered injury as a result. *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 247 N.W. 2d 813 (1976). The failure to allege and establish each element independently defeats a claim of fraud. *Id.*

Plaintiffs do not allege the elements of a claim of fraud, let alone identify any alleged fraud with sufficient particularity to support their attempt to set aside the foreclosure sale. In fact, in their motion to amend their complaint, Plaintiffs state unambiguously that they "intend to abandon some of their original claims [i.e., their fraud claim,]" and that they "are not pleading fraud in the proposed amended complaint."

As noted, all right, title and interest in the property vested in Fannie Mae on October 5, 2011— the date the redemption period lapsed. The only possible argument available to Plaintiffs to challenge Fannie Mae's title to the property requires a clear showing of fraud or procedural irregularity in the foreclosure process. *See, e.g.*, *Piotrwoski,* 302 Mich. at 197; *Overton*, 2009 WL 1507342 at *1; *Tatar*, 2011 WL 3706510 at *1. Plaintiffs have failed to make such a showing and cannot mount an untimely challenge to the foreclosure proceedings or the sale of the property, regardless of how they characterize their claim. *See Dingman,* 2012 WL 884357, at *4–5 (rejecting plaintiffs' suggestion that defendants failure to engage in appropriate loan modification steps was sufficient indicia of "irregularity" to toll the redemption period or void the foreclosure sale); *Snell,* 2012 WL 1048576, at *2 ("Plaintiffs' claim fails as a matter of law because, once the redemption period following the foreclosure of the property expired, their rights in, and title to, the property were extinguished and they lost all standing to bring claims with respect to the property.") Therefore, Plaintiffs' claims must fail.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendants' Motion to Dismiss [dkt 6] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Second Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Date:   January 29, 2013                                                    s/Lawrence P. Zatkoff
                                                                            LAWRENCE P. ZATKOFF
                                                                            U.S. DISTRICT JUDGE